UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00505-CHL

EVA H.,[1]                                                                                              **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**                                                **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff Eva H. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary, and Claimant filed a reply. (DNs 15, 16, 18, 19.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 11.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.      BACKGROUND**

On or about August 9, 2018, Claimant filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on December 28, 2017. (R. at 16, 159-62, 185-86, 209, 211, 214, 235, 258, 455-67.) On January 14, 2020, Administrative Law Judge ("ALJ") Steven Collins ("the ALJ") conducted a hearing on Claimant's applications. (*Id.* at 81-128.) In a decision dated April 1, 2020, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled and found Claimant was not disabled. (*Id.* at 255-77.) Claimant

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

subsequently requested an appeal to the Appeals Council, which granted her request for review and remanded the case to the ALJ for further proceedings. (*Id.* at 278-83, 395-97.) Thereafter, Claimant amended her alleged onset date to August 9, 2018, in writing and, in doing so, recognized that she was withdrawing her application for DIB benefits. (*Id.* at 486.) The ALJ conducted a second hearing on April 22, 2021, at which Claimant's representative reaffirmed her amended onset date. (*Id.* at 41-80, 48.) Thereafter, the ALJ issued a second decision dated June 14, 2021, in which he made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017. (*Id.* at 19.)

2. The claimant has not engaged in substantial gainful activity since August 9, 2018, the amended alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: cervical, thoracic, and lumbar spine degenerative disc disease; obesity; left shoulder impingement; syncope and coronary artery disease; attention deficit hyperactivity disorder; depression; and anxiety. (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 20.)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can perform no more than occasional balancing, stooping, and climbing of ramps and stairs; no kneeling, crouching, crawling, climbing of ladders, ropes, or scaffolds; no more than frequent handling, fingering and feeling with the bilateral upper extremities; no exposure to extreme heat, extreme cold, humidity, wetness, vibration, or hazards, such as dangerous heights or machinery; no use of foot controls with the bilateral lower extremities and no more than occasional overhead reaching with the bilateral upper extremities. The claimant is able to understand, remember, carry out short, simple, routine instructions. She is able to sustain attention and/or concentration for 2-hour periods at a time and for 8 hours in the workday on short, simple, routine tasks. She can use judgment in making work-related decisions consistent with this type of work, that is short, simple, and routine work; and requires an occupation with set routine and procedures, and few changes during workday; and no fast paced production work, no assembly line work. The claimant can have only occasional interaction with

2

        supervisors, coworkers and the public. The claimant should be allowed to alternate into the sitting position from the standing and/or walking positions every 30-45 minutes for 2-3 minutes while at the workstation and should be allowed to alternate into the standing position from sitting position every 30-45 minutes for 2-3 minutes while at the work station. (*Id.* at 23.)

6.     The claimant is unable to perform any past relevant work. (*Id.* at 30.)

7.     The claimant . . . was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (*Id.* at 31.)

8.     The claimant has at least a high school education. (*Id.*)

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*)

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2018, through the date of this decision. (*Id.* at 32.)

Claimant subsequently requested another appeal to the Appeals Council, which denied her request for review on July 26, 2022. (*Id.* at 1-7, 452-54.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2022); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on September 22, 2022. (DN 1.)

## II.   DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2022).

### A.   Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.   Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2022). In summary, the evaluation process proceeds as follows:

4

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

C. **Claimant's Contentions**

Claimant challenged the ALJ's numerical finding no. 5 regarding Claimant's RFC. (DN 15, at PageID # 3744, 3750-56; DN 16.) Claimant argued that in formulating her RFC the ALJ

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2022).

did not follow the rules set forth in 20 C.F.R. §§ 404.1520c, 416.920c for evaluating opinion evidence and that his discussion of the persuasiveness he assigned to the opinion of consultative examiner Jennifer Fishkoff, Psy.D., ("Dr. Fishkoff") was procedurally deficient because it did not contain a sufficient articulation regarding the consistency and supportability factors the ALJ was required by those regulations to discuss in his opinion.[3]  (DN 15, at PageID # 3750-56.)

The new regulations for evaluating medical opinions are applicable to Claimant's case because she filed her application after March 27, 2017.  Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[4]  20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2022).  Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c).  The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions."  20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2).  However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he

---

[3] The headings in Claimant's brief alleged generally that the ALJ's "mental RFC determination [wa]s not supported by substantial evidence," but the only specific argument she articulated under that heading was that regarding the legal error she claimed the ALJ committed in his treatment of the opinion evidence.  (DN 15, at PageID # 3744, 3750.)  Other than some discussion generally of a subset of the medical evidence in her presentation of the facts, Claimant made no specific argument regarding the weight the ALJ attributed to the medical evidence of record.  She likewise did not argue generally that there were particular pieces of or categories of evidence the ALJ failed to consider.  Without some more well-defined argument, Claimant has waived any general challenge to the ALJ's determination of Claimant's mental RFC and assessment of the other evidence of record outside of her challenge regarding Dr. Fishkoff's opinion.  *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

[4] This language indicates that the new regulations have done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2022).

or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[5] specialization, and other factors.[6]  20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).  Where two medical opinions reach different conclusions but are equally "well-supported . . . and consistent with the record," the ALJ is required to state how he or she considered the other three factors in making his or her decision.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims").  However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally.  *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source.  Resorting to boilerplate language to support a finding

---

[5] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[6] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).  These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

As part of his RFC determination, the ALJ summarized the objective findings from Dr. Fishkoff's November 30, 2018, consultative evaluation. (R. at 28.) He noted that Dr. Fishkoff documented that Claimant showed anxious and depressed mood "with appropriate affect"; "thoughts and speech were sequential, goal directed, clear and coherent"; Claimant had unremarkable thought content; Claimant "was oriented"; "[s]hort-term memory was below average and impaired"; "[f]und of information was low average"; concentration was below average; calculation skills and abstract reasoning skills were both low average; and judgment was average. (*Id.* (citing *id.* at 2743-51).) The ALJ noted that these abnormal findings were different than those found elsewhere in the record, writing, "the longitudinal treating exams of record do not support the level of impairment found in this one-time exam." (*Id.*) The ALJ summarized his view of Claimant's mental health treatment records, stating, "As to the nature and severity of the claimant's mental impairments, the notations in the treatment record concerning the claimant's mental impairments do not indicate that the psychological base symptoms would impose broader limitation than those assessed in the [ALJ's RFC]." (*Id.* at 27.) He noted that her treatment had

8

been routine, largely consisting of medication management for medications she was prescribed for impairments including depression, anxiety, and ADHD. (*Id.*) He summarized that except for her mood and affect—which was typically depressed and/or anxious with some instances of "normal"—her "mental status exams across multiple treating providers [were] generally [ ] unremarkable." (*Id.*) She typically had an appropriate/well-groomed appearance; showed relaxed behavior; was cooperative; gave appropriate eye contact; had normal speech with "regular rate, normal volume, fluent, clear, good articulation"; had goal directed thought process and logical thought content; showed normal perception; was awake, alert, and oriented; had intact memory; "was attentive and focused"; showed good judgment and insight; "had adequate fund of knowledge and abstractive ability"; and good personal hygiene. (*Id.* at 27-28 (citing *id.* at 2046, 2054, 2059-60, 2070, 2225, 2235-69, 2274, 2279, 2288-2584, 2589, 2597, 2603, 2608, 2628, 2635, 2661-66, 2668-98, 2797, 2859, 2967, 3028, 3066, 3300, 3348, 3393, 3411, 3441, 3453, 3460, 3479, 3489, 3554-3660).) The ALJ also summarized Claimant's inconsistent testimony and reports regarding her daily activities and concluded that "[d]espite the claimant's allegations at the hearing regarding her activities, the longitudinal record (including exams and reported activities) do[es] not support her allegations regarding the level of impairment in this area." (*Id.* at 28.) Returning to Dr. Fishkoff's opinion in his analysis, the ALJ found her opinion not persuasive. (*Id.* at 29.) He explained,

> The statement of Jennifer Fishkoff, Psy.D.[,] is not persuasive. While the statement offers degrees of limitation as opposed to a function by function analysis, the limits assessed suggest the presence of listing level mental impairment and is being considered herein. The statement finds the claimant has severe impairment as to her ability to tolerate frustration, conform to social standards, and maintain employment. It finds her ability to understand, retain, and follow instructions would be moderately to severely impaired. It finds her ability to sustain attention to perform simple and repetitive tasks is severely impaired. It finds she is not capable of tolerating the stress and pressures associated with day-to-day work activity. This statement is not well supported by the corresponding consultative exam findings

9

> but instead appears to rely heavily on the claimant's subjective reports that make up the bulk of the examiner's report. It is not consistent with the other evidence of record documented herein including the conservative level of treatment received, the longitudinal mental status exams across multiple providers, and the claimant's ability to live independently. For these reasons, the statement is not persuasive.

(*Id.* (citations omitted) (citing *id.* at 2743-51).)

Referencing only the above block-quoted language, Claimant argued that the ALJ's decision did not comport with the requirements of 20 C.F.R. §§ 404.1520c, 416.920c because the ALJ did not sufficiently discuss either the supportability or consistency factors in assessing the persuasiveness of Dr. Fishkoff's opinion as required by those regulations. (DN 15, at PageID # 3750-56.) However, Claimant's argument too narrowly construes the ALJ's discussion of Dr. Fishkoff's opinion. When the entirety of the ALJ's RFC analysis and his multiple references to Dr. Fishkoff's opinion are considered, the ALJ complied with the applicable regulations.

20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) explain regarding "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The ALJ emphasized that Dr. Fishkoff's opinion was not supported by the findings from Dr. Fishkoff's own examination and instead was too much based on Claimant's subjective complaints. (R. at 29.) Claimant argued that this explanation did "not suffice to comply" with the application regulation. (DN 15, at PageID # 3753.) Citing a trio of cases, she argued that in the case of psychological impairments, it is improper for an ALJ to discount a medical opinion solely because it relies on a claimant's subjective reports of symptoms. (*Id.* at 3753-54 (citing *James v. Liberty Life Assur. Co. of Boston*, 582 F. App'x 581, 589 (6th Cir. 2014); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th

10

Cir. 2016); and *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).)[7] In *Blankenship v. Bowen*, the Sixth Circuit found that it was improper for an ALJ to have discounted a medical opinion only because the psychiatrist "examined [claimant] on only one occasion and there was not present a clear diagnostic picture." *Blankenship*, 874 F.2d at 1121. Quoting a case from the United States Court of Appeals for the District of Columbia, the Sixth Circuit explained, "The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." *Id.* (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)). However, as the Sixth Circuit has subsequently recognized—and as Claimant conceded in her brief—"[r]egardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion." *Kepke*, 636 F. App'x at 629. Having reviewed Dr. Fishkoff's opinion, the Court finds that the ALJ did not err in his assessment of the same. As the ALJ corrected noted, the degree of limitation assessed by Dr. Fishkoff was at odds with some of the objective findings in her report; thus, the only logical conclusion by the ALJ was that Dr. Fishkoff over-relied on Claimant's reports of her own symptoms and activities. The ALJ had also noted elsewhere in his opinion that Claimant's reports regarding her daily activities and limitations were not always consistent. In view of these facts, the ALJ did not err in discounting Dr. Fishkoff's opinion for the stated reason. Additionally, his stated reason for doing so did speak to the supportability factor as required by the regulations and is sufficient to comply with the procedural requirements of the same when considered in greater context than that provided by Claimant in her brief.

---

[7] The Court finds Claimant's citation to *James v. Liberty Life Assur. Co. of Boston* unavailing because the case involved a claim for long term disability benefits under an employer plan subject to the Employee Retirement Income Security Act. Claimant provided no authority to support that this context was sufficiently analogous to the instant case for the opinion to lend support to her argument.

11

20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) explain regarding "consistency," "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ found that Dr. Fishkoff's opinion was not consistent with the other medical evidence in the record and with Claimant's daily activities/"ability to live independently." (R. at 29.) Claimant argued that this explanation "fail[ed] to satisfy the articulation requirements contemplated under the regulations." (DN 15, at PageID # 3754.) The Court disagrees. The items identified by the ALJ do address the items the consistency factor is designed to address, and, as with the supportability factor above, when considered in the context of his larger RFC analysis, provide a sufficient explanation to comply with the procedural requirement that he address the consistency factor in his opinion.

Claimant argued that it was improper for the ALJ to rely on the fact that Claimant had only "minimal treatment" for her medical impairments in assessing the consistency factor, citing *Chapman v. Colvin*, No. 0:14-cv-168-KKC, 2016 WL 1060354, at *2 (E.D. Ky. March 16, 2016). (DN 15, at PageID # 3754.) The Court finds *Chapman* non-dispositive of the instant case. In *Chapman*, the United States District Court for the Eastern District of Kentucky criticized an ALJ's citation to a claimant's "minimal treatment" as one basis for not giving controlling weight under the then-applicable treating physician rule to her treating physician's opinion. *Chapman*, 2016 WL 1060354, at *2-3. The court found that the ALJ's reference to "minimal treatment" was unsupported by the record and also seemed to be unsure what the ALJ meant by that term. *Id.* The court noted that often "[c]ases finding 'minimal treatment' supportive of an ALJ's opinion have relied on 'conservative treatment [that] was successful.' " *Id.* at *2 (quoting in part *Villareal v. Sec'y of Health & Hum. Servs.*, 818 F.2d.461, 463 (6th Cir. 1987)). The instant case is

distinguishable from *Chapman*. First, unlike in *Chapman*, the ALJ was relying on Claimant's conservative treatment, not minimal treatment. Second, the record supports his characterization. He noted elsewhere in his RFC analysis that she had undergone "routine" treatment for her mental health impairments that largely consisted of visits for management of her prescription medications. (R. at 27.) This combined with his recitation of the various normal mental health objective findings in her records support his assertion that her conservative treatment was working to a large extent. (*Id.* at 27-28.) As he did impose limitations in his RFC determination related to Claimant's mental impairments, his analysis in no way suggested that her treatment completely eliminated the effects of all her impairments. These facts make this case distinguishable from *Chapman* and support that the ALJ's analysis was proper.

Claimant also argued that it was error for the ALJ to rely upon her ability to live "independently" in discounting the consistency of Dr. Fishkoff's opinion with the overall record citing *W.J. v. Comm'r of Soc. Sec.*, No. 21-cv-126-RJD, 2022 WL 3585959, at *6 (S.D. Ill. Aug. 22, 2022). (DN 15, at PageID # 3754.) She argued that the ALJ's "reference to [her] ability to live independently [wa]s not—in itself—a valid reason to reject" Dr. Fishkoff's opinion. (*Id.*) But the ALJ did not reject Dr. Fishkoff's opinion *solely* because Claimant could live independently; that factor was only one of several reasons he provided. The Court also finds *W.J.*—which is non-binding on this Court—distinguishable from the instant case. In *W.J.*, the United States District Court for the Southern District of Illinois found that an ALJ's reference to a claimant's daily activities did not support his RFC determination and in particular did not support the ALJ's evaluation of claimant's alleged symptoms. *W.J.*, 2022 WL 3585959, at *5-6. The court explained, "[T]he Seventh Circuit . . . has repeatedly cautioned that a person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily

13

translate into an ability to work full-time." *Id.* at *6 (citing *Roddy v. Astrue*, 705 F.3d 631, 640 (7th Cir. 2013)). This is not what the ALJ in the instant case did. The ALJ cited Claimant's ability to live independently as one of the reasons he did not find persuasive the limitations proposed by a consultative examiner; he did not equate Claimant's ability to live independently with her ability to work full-time. His statement must be considered in light of his overall discussion of both Claimant's RFC and Dr. Fishkoff's opinion. Specifically, his reference to her ability to live independently ties back to Dr. Fishkoff's overreliance on Claimant's subjective reports and the fact that the ALJ noted that Claimant's testimony regarding her limitations has not always been consistent. In light of these facts, the Court finds no error in the ALJ's reference to Claimant's daily activities/ability to live independently.

Having rejected Claimant's substantive and procedural challenges to the ALJ's analysis of the consistency factor, the Court concludes that the same was procedurally sufficient and supported by substantial evidence.

As Claimant has failed to demonstrate any error in the ALJ's discussion of Dr. Fishkoff's opinion, the Court finds that same supported by substantial evidence and compliant with the requirements of 20 C.F.R. §§ 404.1520c, 416.920c. Therefore, the Court will affirm the decision of the Commissioner.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of Record
June 23, 2023